Filed 2/24/26  In re G.Q. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re G.Q., et al., Persons Coming Under the Juvenile Court Law. | B347575 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22LJJP00502A-C) |
| Plaintiff and Respondent, | |
| v. | |
| F.T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra Gonzales, Judge Pro Tempore.  Conditionally reversed and remanded.

Elizabeth Klippi, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

F.T. (Mother) appeals from the juvenile court's order terminating parental rights over her sons G.Q., A.Q., and K.T (Minors).  We consider, under the deferential standard of review that applies (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141), whether the juvenile court and the Los Angeles County Department of Children and Family Services (the Department) complied with their inquiry obligations under California law related to the Indian Child Welfare Act (Welf. & Inst. Code,[1] § 224 et seq. (Cal-ICWA)).

## I.  BACKGROUND

Mother and G.Z., Jr., the father of G.Q. and A.Q (Father),[2] began arguing in August 2022 when the family was packing to return to California from Missouri.  G.Q. stepped between his parents to protect Mother, and Father threw the teen against a wall, knocking him to the ground.  Father then began choking G.Q. and stopped only after G.Q. stabbed him with a screwdriver.  Father then followed G.Q. into a bedroom and punched the teen in the head and stomach.  The physical abuse ended after Mother and an adult sister intervened and took G.Q. to the hospital.

The following month, once the family was back in California, the Department opened an investigation into the abuse that occurred in Missouri.  As part of its investigation, the Department spoke with Mother, who, among other things,

---

[1]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

[2]     Father is not a party to this appeal.

advised that B.T., the father of K.T., was deceased. The Department also spoke with G.Q. and A.Q.'s paternal grandfather G.Z., Sr., who denied having any Indian ancestry. So far as the record reveals, the Department did not question An.Z. (G.Q. and A.Q.'s paternal grandmother) about possible Indian ancestry.

In November 2022, the Department filed a juvenile dependency petition alleging Minors were at substantial risk of suffering serious physical harm from Father's physical abuse of G.Q. and Mother's failure to protect the child. Attached to the petition was a declaration by a Department social worker stating she had questioned Father and he provided no information suggesting any of the Minors were or may be Indian children.

At the initial detention hearing held later that same month, two relatives of G.Q. and A.Q., a paternal aunt Al.Z. and an adult sibling S.Z., were present with Mother. The juvenile court asked them if they had any Indian ancestry and all three said they did not. Mother and Father also submitted ICWA-020 Parental Notification of Indian Status forms that provided no information suggesting Cal-ICWA applied. In addition, Mother (through her attorney) advised that she was not aware of any Indian heritage for K.T. through his father B.T. The court concluded it did not have any reason to know Minors were Indian children and detained them from Mother and Father while ordering monitored visitation.

The following month, the Department filed an amended petition alleging Minors were also at risk of harm from Mother's substance abuse. At Mother and Father's arraignment on the amended petition, the juvenile court, among other things, directed the Department to assess the maternal grandmother

3

T.Q., who lived in Northern California, as a possible placement option for Minors.

In advance of the jurisdiction hearing, the Department's report revealed Mother said G.Q. and A.Q.'s maternal grandmother "has documented Native American [h]eritage" in a child welfare investigation undertaken in Missouri during 2014-2015.[3] A Department investigator spoke with Minors' maternal grandfather J.Q., who denied being aware of any Native American ancestry in his family or in the family of the maternal grandmother. The investigator also re-interviewed Mother, who said she had two siblings. The record does not indicate whether the Department ever spoke with either sibling about the issues giving rise to the dependency petition or Minors' Indian heritage, and there is no indication the Department questioned Minors' maternal grandmother herself about Cal-ICWA issues. Other than confirming the death of K.T.'s father, the Department did not document any efforts to communicate with K.T.'s paternal relatives to determine if there was any Indian ancestry in their family.

At the adjudication hearing held in January 2023, the juvenile court sustained the amended dependency petition as further amended by interlineation. The court removed Minors from Mother and Father's care and ordered monitored visitation and reunification services. The court also ordered the

---

[3] The documents relating to the Missouri child welfare investigation that were attached to the Department's December 2022 jurisdiction and disposition report do not reveal whether a Missouri court determined the children were Indian children.

4

Department to provide an update about its efforts to evaluate the maternal grandmother as a possible placement for Minors.[4]

In advance of the six-month status review hearing, the Department reported it spoke with Ang.Z., another of G.Q. and A.Q.'s paternal aunts, and she too had denied any Indian ancestry. The Department also reported it had made further ICWA-related inquiries of Mother and the maternal grandfather, each of whom re-affirmed the absence of any Native American ancestry. The Department's reporting did not discuss any efforts to locate and inquire of the paternal relatives of K.T. At the contested six-month review hearing, the juvenile court renewed reunification services for Mother and Father for an additional six months even though both parents were only in "partial" compliance with their respective case plans.

In the interim between the six-month and 12-month status review hearings, the Department advised the maternal grandmother would not be able to take Minors into her home because it was too small. The maternal grandfather, however, was willing to have Minors placed with him in Missouri and adopt them if reunification failed. The Department reported it conducted follow-up Cal-ICWA-related inquiries with Mother, Father, the maternal grandfather, and V.Z. (an adult sibling) and all denied any knowledge of Indian ancestry. At the 12-month

---

[4]     Mother noticed an appeal from the juvenile court's jurisdiction findings and disposition orders. Pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835, this court dismissed the appeal as abandoned. On our own motion, we have taken judicial notice of the record in that prior appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

status review hearing, the juvenile court continued reunification services for Mother and Father.

Four days after the 12-month status review hearing, on January 12, 2024, the juvenile court issued an "Attorney Order," which required, among other things, that the Department "interview/attempt to interview all known and available extended family members about whether [each of the Minors] is, or may be, an Indian child" and "document all its efforts and submit a written report [in advance of the 18-month status review hearing] on the results of the interviews/attempts to interview all extended family members."

In its 18-month status review report, the Department summarized its prior Cal-ICWA-related inquiries, as well as its most recent follow-up Cal-ICWA inquiries with the maternal grandfather and Mother. In response to the Department's latest inquiry, the maternal grandfather advised, "there is absolutely no [N]ative American [sic] in our heritage. Myself and my cousin in Utah have done extensive family heritage background checks and created our family tree. We have family that came from Ireland, Scotland[,] and Belgium. Our family came to America in 1647." Mother related that K.T. "has a brother and sister in Missouri, [and] also a grandmother." Although Mother promised to look for contact information for those paternal relatives, she cautioned that she might be unsuccessful.

At the 18-month status review hearing, held on July 17, 2024, the juvenile court terminated reunification services for Father and, over the Department's objection, continued reunification services for Mother.

In a status review report submitted in the fall of 2024, the Department advised that "no new information" had been

"brought" to it "by the family regarding ICWA." At the contested 24-month review hearing held in December 2024, the juvenile court terminated reunification services for Mother, directed the Department to provide permanent placement services to Minors, and set a permanency planning hearing.

In advance of that hearing, the Department reported the maternal grandfather once again denied any Indian ancestry and added that "no new information [had been] provided to [it] regarding ICWA." At the permanency planning hearing held in mid-April 2025, the juvenile court reiterated its prior finding that there was "no reason to know or believe that [ICWA] applies to any of the three children." The court terminated parental rights and designated Minors' current caregiver, the maternal grandfather, as the prospective adoptive parent.

## II. DISCUSSION

Mother's sole argument is that the orders terminating parental rights should be conditionally reversed because the Department did not make Cal-ICWA inquiry of T.Q. (G.Q. and A.Q.'s maternal grandmother), An.Z. (G.Q. and A.Q.'s paternal grandmother), G.Q. and A.Q.'s maternal aunt and uncle, and any of K.T.'s paternal relatives. The Department has not filed a brief in this appeal; instead, it concedes Mother is correct and recommends we conditionally reverse the orders terminating parental rights and "remand the case with directions that [the Department] conduct a complete initial inquiry as to the above-referenced extended family members [i.e., the maternal grandmother, maternal aunt, maternal uncle, and the paternal grandmother of G.Q. and A.Q.]" and of unspecified "extended

7

family members regarding [K.T.'s] potential Native American Indian ancestry."

We will accept the Department's confession of error—but only to a point. The concession is appropriate as to K.T. because there was no inquiry at all (other than Father himself) on the paternal side of K.T.'s family. As to G.Q. and A.Q., however, the concession is appropriate only as to their maternal grandmother, who Mother said (many years ago) had "documented" Indian ancestry. While there is significant countervailing evidence, including the maternal grandfather's statements that he had done "extensive family heritage background checks" and there was "absolutely no [N]ative American [ancestry] in our heritage," we believe Mother's representation in the Missouri proceedings is minimally adequate to require targeted inquiry of the one person she identified. Our disposition will not, however, direct any further inquiry beyond that—instead leaving the specifics of who else, if anyone, must be questioned to the juvenile court's discretion.

###### A.      Standard of Review

An ICWA finding by a juvenile court is subject to a deferential review. (*Dezi C., supra,* 16 Cal.5th at 1141 ["the juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' . . . subject to a deferential standard of review"]; see also *id.* at 1166 (dis. opn. of Groban, J.) ["[A]s the majority explains, a juvenile court's finding that the child welfare department met its inquiry requirements under Cal-ICWA is entitled to substantial deference on appeal"].)  "If, upon review, a juvenile court's findings that an inquiry was adequate and proper

8

and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child.  On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Id.* at 1141.)

### B.	Analysis

Under Cal-ICWA, the Department and the juvenile court have "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).)  This duty includes making initial inquiries of extended family members. (§ 224.2, subd. (b).)  Our highest court has explained the duty of inquiry does not require interviewing "every" extended family member, however. (*Dezi C.*, *supra*, 16 Cal.5th at 1140 [holding reversal is not required "in all cases in which every possible extended family member has not been asked about the child's Indian ancestry"]; see also *id.* at 1153 (conc. opn. of Kruger, J.); *id.* at 1167 (dis. opn. of Groban, J.) [requiring inquiry of "every member of a child's extended family, including every first and second cousin, every single niece and nephew, all aunts and uncles, all siblings-in-law" would be "'absurd at best and impossible at worst'"].)  The point is to undertake an initial inquiry that suffices "to reach a reliable conclusion about the applicability of ICWA." (*Id.* at 1153 (conc. opn. of Kruger, J.).)

Here, conditional reversal of the order terminating parental rights over K.T. is required because there is no record of any effort to contact and inquire of relatives on the paternal side of

9

K.T.'s family.  The most the record reveals is a statement by Mother's attorney at the initial detention hearing that his client did not believe K.T.'s father had any Indian ancestry.  That second-hand expression of belief is not enough.  Mother had advised the Department that K.T. had a brother, sister, and grandmother living in Missouri, but there is no evidence the Department attempted to locate and interview any paternal relatives.  That must be done on remand.

The situation with G.Q. and A.Q. is not as straightforward. As to them, Father and Mother repeatedly said they had no reason to believe the children were Indian children.  The Department also interviewed the paternal and maternal grandfathers who similarly denied any Indian heritage—in particularly emphatic and apparently well-informed terms by the maternal grandfather.  The Department also interviewed two paternal aunts and two adult siblings who denied Indian ancestry too.  But for the statement by Mother in the Missouri child welfare investigation that the maternal grandmother had "documented" Indian heritage, the inquiry undertaken would be enough to sustain the juvenile court's Cal-ICWA finding.  But in light of that statement by Mother (even though it was followed in these proceedings by her repeated denials of Indian ancestry), we believe further inquiry should have been made of the maternal grandmother herself (and, possibly, of any findings the Missouri courts may have made that would bear on Cal-ICWA's applicability).  We will therefore conditionally reverse the parental rights termination orders, but our disposition will reflect the narrow reason why we believe the evidence is inadequate as to G.Q. and A.Q.

## DISPOSITION

The June 24, 2025, orders terminating parental rights are conditionally reversed and the cause is remanded solely for further proceedings required by this opinion.  The juvenile court is directed to oversee a reasonably adequate effort to locate and interview extended family members on the paternal side of K.T.'s family concerning whether K.T. is or may be an Indian child.  The juvenile court is further directed to oversee a reasonably adequate effort to interview G.Q. and A.Q.'s maternal grandmother concerning whether those children are or may be Indian children.  Nothing in this disposition precludes the juvenile court from ordering additional inquiry if it deems it advisable.  If, following additional inquiry, there is no reason to know any of the Minors are Indian children, the court's order terminating parental rights shall be reinstated.  If additional inquiry results in information indicating there is reason to know any of the Minors is an Indian child, the juvenile court shall proceed in accordance with Cal-ICWA as to the Minor(s) in question.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

HOFFSTADT, P. J.                    KIM (D.), J.

11